SARAH C. WITTE, ADMINISTRATRIX OF GEORGE C. WITTE, v. ATLANTIC COAST LINE RAILWAY COMPANY.

(Filed 7 April, 1915.)

**Railroads—Negligence—Construction of Railroad Yards—Rules of Safety— Trials—Instructions—Appeal and Error.**

In an action brought against a railroad company for the negligent killing of plaintiff's intestate, alleged to have been caused by a horse becoming frightened at the noise and steam issuing from defendant's steam engine and running upon the intestate, there was further allegation that the defendant's railroad yard was not constructed or laid out properly for the safety of those having business there, and that proper rules for that purpose had not been made for or observed by the defendant's employees there, but without sufficient evidence tending to prove these further allegations. *Held*, a charge of the court interwoven with instructions bearing upon the negligent construction of the railroad yards and the question of proper rules, is misleading and constitutes reversible error.

APPEAL by defendant from *Allen, J.,* at September Term, 1914, of NEW HANOVER.

Civil action tried upon these issues:

1. Was the plaintiff's intestate killed by the negligence of the defendant Atlantic Coast Line Railroad Company, as alleged in the complaint? Answer: "Yes."

2. Was the plaintiff's intestate guilty of contributory negligence, as alleged in (by) the defendant Atlantic Coast Line Railroad Company? Answer: "No."

3. What damage, if any, is the plaintiff entitled to recover? Answer: "Five thousand dollars ($5,000)."

From the judgment rendered, the defendant appealed.

*E. K. Bryan for plaintiff.*
*Davis & Davis for defendant.*

BROWN, J.   It appears in evidence that the plaintiff's intestate went to the defendant railroad's freight warehouse on business; that as he was leaving, walking along a plankway, one of the horses attached to a wagon belonging to the Schloss Company became frightened at the noise and steam issuing from the defendant railroad company's switching engine, moving up and down near the freight warehouse in the freight yards.   The horses ran away, and in the endeavor to control them the bit of one of the horses broke, the driver lost control of the horses, and they turned around and ran in the opposite direction, overtook the intestate, who was very deaf, ran into him, and killed him.

By consent, the case has been tried separately as to the defendant railroad company, with the result set out in the issues.   The case has not been tried as to the other defendant.   There are a great many exceptions in the record which, in the view taken by the Court, it is not necessary to consider.

One of the allegations of negligence upon which the plaintiff bases his right to recover is that the defendant railroad company, some years ago, negligently and carelessly constructed its freight warehouses and negligently laid out and arranged its tracks in its shifting yards so that it was hazardous for employees and patrons of the said railroad company, and other persons who were rightfully upon its premises, from runaway teams which may become frightened and unmanageable.

The plaintiff further alleges that the defendant railroad has negligently failed to make any sufficient rules to guard against such occurrences; or, if it has made any such rules, its servants and employees violate the same.

His Honor charged the jury as follows: "Now, was the railroad company negligent in having various switching tracks around its warehouses and having them all together, and in not having certain rules, if you find that they did not have such rules, by which the switching could be regulated with reference to the getting freight out of the depot, and was its engineer negligent in running by this team at the time when he did run by, and in blowing off steam and making the noise?   Under all the circumstances, was that negligence? and if so, did that negligence cause the horses to run away, and did they run over and kill the deceased?"

We think that there is no evidence in this record tending to prove that the warehouse and freight-yard tracks were constructed and laid out in a negligent manner.   There is no evidence that they were laid out differently from the manner in which other freight yards are laid out.

There is no evidence that it is customary among railroads to have rules and regulations governing the use and operation of moving trains in their freight yards, or regulating the ingress and egress of patrons visiting the freight warehouses.

The evidence shows that these yards and warehouses were constructed and laid out a great many years ago—in fact, at the time when the railroad was first built. We think it was error in his Honor to have interwoven this ground of negligence along with the alleged negligence of the engineer in operating the train. From such charge the jury may have inferred that they had a right to find against the defendant railroad company because of the alleged improper construction and laying out of their freight yards.

The stational facilities of railroads must be reasonably sufficient and must necessarily be constructed according to the particular location. Terminal yards are necessary to a railroad in order to facilitate its business of transportation. It would seem to be impossible to so construct them as to guard absolutely against dangers from runaway teams; but whether that be true or not, there is no evidence in this case that the defendant company has been guilty of any negligence in arranging its freight stational facilities.

Whether depots, station buildings, yards, and other stational facilities are sufficient must, it is evident, depend in a great measure upon the demands of traffic at the place where they are located, the custom and usage of the railroad company's business, and matters of similar nature, for it is evident that facilities sufficient in one locality and under the same circumstances would not be sufficient in other localities and under different circumstances and conditions.

New trial.